Our next case is Tyco Healthcare Group in the United States Surgical Corporation v. Applied Medical Resources, 2013-1624 and 14-10-12. Mr. Ray. Good morning, Your Honor, and may it please the Court. Under any construction of the word minimize, whether it's reduction or minimize, no evidence, no evidence was submitted that my client infringed Claim 6 of the 377 patent, which has a very particular limitation. A limitation which caused us not to challenge its validity. We challenged the validity of every claim asserted. Every claim was invalidated except for the one we did not seek to invalidate, Claim 6 of the 377. This claim specifically requires that the relatively flexible end portion is what causes the effective minimization of the insertion force of the instrument. No evidence was submitted. In fact, in the pre-trial proceedings in motion limine practice, Tyco admitted they had no evidence of this reduction in arguing prejudice to the Court that they needed to have some testing admitted to the jury which was excluded. Judge Plager put the piece and you'll see the very, very thin tips of that protector. Those thin, thin tips do not reduce the insertion force at all of the instrument. Those tips were thinned to prevent catching of the instrument upon withdrawal. Withdrawal, not to reduce force on insertion. So we submitted tests through our experts where those identical leaflets were of uniform thickness and therefore uniform rigidity and as expected, they had virtually no effect on the insertion force. You repeatedly objected to Applied's witnesses' references to thickness, but you didn't ask for a jury instruction. I'm representing Applied and it was Tyco on their cross-appeal. It's very confusing because there's two trials. I'm sorry, I apologize. I have a note. Your question goes to the cross-appeal. It's very understandable. Well, that's nice of you to say. It is. It's very confusing with the two trials and the two sets of products and the two sets of patents and the two cross-appeals. Your case was the one with the damage award. Correct. The first trial. Which is reason to appeal it. That was reason enough to appeal. $4.8 million with interest led to $6.2 million based upon the allegation, the conclusory statement from an expert that the thinning of our tips is what caused a reduction in insertion force. Now, we didn't challenge validity because it would be very, very difficult to actually have a prior art device to test to show that the thinning or variable rigidity reduced insertion force. But for the same reason, it was very difficult with no testing at all for the plaintiff to prove that the thinning or the more flexible or relative flexibility is what caused a minimization, no less, not even a reduction, a minimization of the force required to advance the elongated object through the guard members. Are you telling us, Mr. Ray, that all this discussion about whether minimization means reducing and how much, that's not at issue? Well, we did raise that as a claim construction, but you're correct. Regardless of whether it's a reduction or a more reduction or a minimization, either way, we still make the same argument that there's no evidence to suggest that those little teeny thin tips reduce the force, the insertion force. Are you abandoning that minimization argument? No, I'm not abandoning it. I'm just saying you could easily reverse without tackling the subtleties between minimization and reduction. I'm glad to hear you say that because I could not understand the subtleties between those two phrases that you all are arguing about. Well, we believe minimization is to a greater extent than a mere reduction. We gave the tennis example. You don't minimize your unforced errors by going from 50 to 49. I'll take your word for that. Yes, he certainly would. If he was still here, he would be enjoying this right now. There's other claims where the patent says reduction. We have other claims. Claim six of the related patent under 702 says reduction. This claim says minimization. It says effectively minimize. Effectively, which also, another word that was not really treated in the claims, but regardless, regardless of whether we talk about effective, ineffective. I didn't mean to get you launched into something that you were not launching. So, I'm just congratulating you on not trying to get us to understand the subtle differences that you all were writing about. What I really care about with regard to the limitation is that it be given some meaning. I believe that Tycho is giving it no meaning. And Tycho gave it no meaning throughout pre-trial and trial, and causing the district court to continually emphasize various pieces of the claim language that shows the interaction between the leaflet of guard member and the Alaska American material that would lay behind that piece you have in front of you, Judge Flager. They now have abandoned their trial strategy. The trial strategy below is very simple. They relied on the patent itself, where the patent says, if you thin it… Well, they had expert testimony to support them on what's now your argument, didn't they? They had expert testimony with nothing to back it up. The problem was their tests were excluded, so the expert was at trial with no data, no testing, and pointed to anything he could in the courtroom. He pointed to his own fingers. He pointed to the binders that were on the desk. He made analogies that if you chopped through the binders and the desk, two binders would be harder to chop through than one binder. Not relevant at all. He relied on the patent itself, which is complete hearsay on the truthfulness of whether or not a thin tip reduces insertion force. So he had nothing to back up his conclusory statement, trust me, if it's thinner, it's easier to go through, whatever that means. And so, in my view, the district court erred in even letting him present a rebuttal case on his prima facie case of infringement after excluding any testing that they wanted to introduce. And for that reason, it's our view, and we submit, that no evidence supports the jury verdict of infringement of Claim 6 of the 377 patent. And if there's nothing further, I will... You're talking about Mr. Dubril, right? Yes, that was the plaintiff's expert who just simply concluded with nothing, with no basis, that thinner is easier to get through than thicker. But his testing was just testing them as cantilevers with no backing, not in the accused's advice, not against the elastomeric seal. And there's no doubt, and Mr. Dubril and Tyco relied heavily on the fact that putting slick plastic in front of rubber reduces insertion force. That's not disputed. The claim requires that the relative flexibility of the tip is what causes a further reduction in insertion force, and for that they had absolutely no evidence. One of the problems with a jury trial, when you're trying to overturn it on the grounds that there's no evidence before the jury, is that in a case like this, there's a lot of evidence on a lot of different things, not all of which tie together to any one thing. And it's almost impossible to figure out exactly what it is the jury may have thought about, isn't it? That's correct, but the standard of review allows us to look at what the evidence was on this particular point. All the evidence. Well, the parties are very clear in the briefs what evidence each is relying upon. Here it's very clear that they're now on appeal. You're relying on no evidence. I'm showing that none of their evidence is probative to the thinness, the extra thinness of the tip being the reason for the reduction in insertion force. What they're talking about is, for example, guard members in general. That's not probative. We all agree guard members reduce insertion force. Could the jury believe an expert engineer when he is asked an expert kind of leading question? To an engineer, it is always, on 11-576, it is always easier to get to thinner material next to a constant than thicker material next to a constant. He says, always. Well, your guess is as good as mine at what he meant. I don't think that statement is supported. I don't even know what it means. But you can feel for this poor expert who's up there with no testing, no data, nothing, unrebuttal, with a new claim construction that he can't comply with. I think the jury here just, as they say, split the baby, and that was the end of the first trial. If there's nothing further, I'll save my remaining 4 minutes and 19 seconds for rebuttal. Thank you. Thank you. Mr. Ray, you've effectively minimized your argument time. Therefore, we'll save the rest for you. Mr. Jakes. Mr. Ray said, trust me. We also trust you, too. Good morning.  Was there some testing in there? There was testing, Your Honor. That's what I thought. There was testing of the material, and it showed that the tips were much more flexible than the remainder of the fingers. Testing in evidence, right? That's right. Where is that in the record? I was looking for it when I ran across that test. I have JA 11553 as being one point where the test showed the ends were substantially more flexible, 60% more flexible than the guard members. But it was talked about throughout. That testing went to the flexibility. As Mr. Ray argues, there is no evidence. Well, that's clearly not true. There was lots of evidence. There was no dispute that their design reduced friction, that the insertion force was reduced. There was expert testimony, the testing, their own documents. The question that they focused on is under the district court's construction, is that reduction in force due to the flexible ends? And on that, we did also have evidence. There was the test that the expert performed that showed changes in flexibility. He testified thinner, more flexible material is easier to pass through than thicker or less flexible. He explained how the seal acts as a constant force against the guard member. This is somebody with 20 years in trocar design. He knows how these things behave. He knows that the valve seal acts as a constant force. It's a jury question. It's just that simple. And under the highly deferential standard review, we're not to question. Mr. Ray drew a strong distinction between insertion forces and extraction forces.  What about that? Extraction forces aren't what's claimed. So if it also reduced extraction forces, that's fine. If that was one of the intents of Applied's design, that's fine too. It's not really relevant. The question is, did it reduce the insertion force? And we have evidence to show that. Now, there is some debate about the tests and the quality of the tests. Mr. Ray referred to the tests his expert did. But we're not here to judge whose tests were better. There were valid criticisms of the tests that Applied's expert did. As we pointed out in our brief, it was inserted at literally a snail's pace. And the jury could have actually concluded that that showed their tests were not valid. And maybe even drawn an adverse inference. I actually prefer a doctor who goes slowly to one who goes fast. That's a separate issue. That's a separate issue. And as the testimony of the trial was, that's not the way they're normally used. So a jury could actually infer that if Applied had to do its tests under such odd conditions, that maybe if they used them under normal conditions, they wouldn't have gotten those results. So there was plenty for a jury to rely on and conclude here that intringement had been met. I should also point out, all the structural limitations in this claim are met. There's no dispute. Applied conceded that. It's this one functional limitation. And this court's law, it says there's no general rule that says you have to have particular tests. Any method of analysis that is probative of the fact of infringement is valid. That's the habit case. The expert testimony, usually when somebody says it's conclusory, that's a label that's put on it after the fact. So the testimony that we have cited shows that our expert testified that way and backed it up. Mr. Jacobs, let me go back to the question that I was supposed to have asked you. Yes. You repeatedly objected to statements that you didn't ask for during the trial. That goes to our cross-appeal on the spent pounds. That's right. Yeah. We did repeatedly object to that. We did ask for a claim construction on that. The judge said he was going to give a claim construction on that. But didn't. But he didn't. And that's our argument on appeal, is that the judge was required to construe that claim when the dispute became a concrete and definite dispute, as it did during the trial because it was objected to repeatedly. He thought it was plain enough. That's right. And, again, this goes back to the O2 micro case, which was also a plain meaning case. The meaning of the words is really what – that wasn't in dispute. There's no dispute over what rigid means. It's the scope of the claim. And did the scope of the claim require different thicknesses? And in Applied's closing argument, that's what they said. They said it requires different thicknesses. That's a claim construction issue. And the jury could have been, and we believe was, put into a position where they were forced to make that claim construction that the judge should have done. We also have our cross appeal on the green patents. And this deals with a means clause, a means engageable. The function there is to facilitate expansion of the aperture of the valve. Now, we're arguing here that the court did not adequately describe the corresponding structure. It was simply described as fingers 78. And there was a dispute that we said that corresponding structure should be that the fingers conform to the wall of the valve member. That was what was described in the specification. If you look at the specification, it describes how it works. These flexible fingers conform to the surface of the valve. Sufficiently flexible. Sufficiently flexible, right. And they conform. And that spreads the force across the valve. And that assists in opening the aperture. There are plenty of other structures that would also assist in opening the aperture. But for a means clause, it has to be the structure that's described in the specification. And simply saying fingers 78 was not enough. How long did this trial go on for? There are actually two trials. Two trials. Two trials. I think they were in the, well, Mr. Ray can probably tell you better since he was there and I wasn't. But between a week and two weeks, I believe. Eight or nine days of transcript testimony. The means for expanding was also at issue in the interference. And we cited that as, we believe, as strong evidence of how this claim should have been construed. It was the same related green specification. Had a clause of means for expanding. The patent office applied the broadest reasonable construction and said the corresponding structure was the soft flexible fingers that conform to the valve. And as a result, the interference was dissolved. If the patent office had just said fingers 78, that wouldn't have happened. And applied with a party to that interference and agreed with that. So we think that particular claim limitation in the green patent. Do you agree with Mr. Ray that the dancing of angels on the tip of a pin, which is what minimize versus reduce amounts to, that we really don't need to spend a lot of time on that? I would agree, Your Honor. I would agree with that. The construction that was given was adequate under the circumstances and adequately reflects the scope of the patent. Thank you. If there are no further questions, I've addressed all the points, too. And we will reserve the remainder of your time on the cross appeal if there's anything to rebut. Thank you. Mr. Ray. Four minutes plus. You'll notice that Mr. Jakes referred to the testing again, but that was the testing of the pieces in air, which they admitted on the record repeatedly was not probative to infringement. If you go to page 16 of the blue brief, I list some of the admissions and arguments made by Tyco in showing the prejudice to not doing additional testing. And so the testing that Mr. Jakes just referred to, they are on the record as saying that those tests and their expert witness has not previously performed tests to determine whether guard members with more flexible end portions independently reduce insertion force, which was unnecessary under his prior interpretation of the disputed claim terms. That's at JA7283. And I listed several of the admissions on page 16 of my brief where they are denigrating the very tests they now say are substantial evidence. And you'll notice in the red brief and the gray brief, nowhere have they dealt with any of these admissions as to the lack of probative nature of the very testing that Mr. Jakes now says 60 percent reduction. All that shows is that a 60 percent reduction when it's thinner than thicker, but nothing to do with the accused's devices and how they reduce insertion force in the trail card. With regard to the cross appeal, the judge was well aware of O2 micro, and in fact, this same judge in both trials repeatedly refined the claim construction throughout. So to say that this judge who cited O2 micro in his several Markman opinions is really not fair to the judge below, because he was well aware of his continuing obligation to refine the claim construction, and the claim constructions were more than adequate under the circumstances, as the phrase Mr. Jakes just used. And I think the judge did a stellar job with regard to the claim constructions at issue on the cross appeal. With regard to the means engageable in the 143 patent, the district court did a fine job showing that there was no linking, no linking to the function under 112 paragraph 6 where the plastic flexible finger 78 had to conform to the inner surface of the elastomeric valve. That was clear that part of the specification was talking about assembly and positioning and not about dilating the aperture. So the district court understood this court's requirements that the corresponding structure actually linked to the function. And here he explained that in his opinion, and nowhere does Tyco quote the specification full to show the lack of linking to the means engageable to facilitate opening of the orifice. And so there was no error by the district court on those claim constructions, and the cross appeal is entirely without merit. And if there's no further questions, I'll conclude. Thank you. Thank you, Mr. Ray. Mr. Jakes, it's time to respond on the cross appeal. Just on the cross appeal. Thank you, Your Honor. If you read the specification, it describes these fingers as conforming to the inner surface of the valve. And what does that do? It spreads the force more evenly across the valve. And by that, assists in spreading open the aperture. That's how it works. That's how it's described. It's not a separate function that it conforms and facilitates opening. There would be no reason for it to conform. It's not simply a way to assemble it when it's in position. That's how it works. It's different than the rigid levers, which were in the prior art, which provide not a conforming force, but more about pushing in certain points. The other point I'd make is on O2 micro and our cross appeal on the Smith patents. Yes, the judge was well aware of it. This issue came up 14 or 15 times during the trial. The judge said, I need to construe the claim, and he didn't. Thank you. Thank you, Mr. Jakes. We'll take the case under review.